UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CASE NO. 3:07-CV-65-KKC

JOHNSON CONTROLS, INC., et al.,                                    PLAINTIFFS

v.                               **OPINION AND ORDER**

COMMONWEALTH OF KENTUCKY,
FINANCE AND ADMINISTRATION CABINET;
MIKE BURNSIDE, in his official capacity as
SECRETARY OF FINANCE AND ADMINISTRATION;
JOHN MAY, in his official capacity as
COMMISSIONER OF THE DEPARTMENT OF REVENUE,            DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on the Motion to Dismiss filed by Defendant Finance and Administration Cabinet of the Commonwealth of Kentucky [R. 18], as well as the separate Motion to Dismiss filed by Defendants Burnside and May  [R. 19].  For the reasons given below, the Defendants' Motions to Dismiss are **GRANTED IN PART** and **DENIED IN PART.**

## I.      Factual Background

The Plaintiffs in this action describe themselves as multi-state groups of unitary corporations.  They are engaged in various types of businesses and operations, and are headquartered in a variety of states.  They operate as multi-state corporations engaged in interstate commerce.  Defendant Finance and Administration Cabinet [hereinafter "Finance Cabinet"] is an agency of the Commonwealth of Kentucky.  Defendant Mike Burnside is the Secretary of the Finance Cabinet.  In this capacity, Burnside is the Chief Financial Officer of the Commonwealth.  His duties include paying to Kentucky taxpayers any tax overpayment that is deemed owed to them.  Defendant John May is the Commissioner of Revenue of the

Commonwealth of Kentucky.  His duties include administering and enforcing Kentucky's corporate income tax laws and processing claims for income-tax refunds.  Defendants Burnside and May are both being sued solely in their official capacity as state officers.

In 1988, the Revenue Cabinet[1] of the Commonwealth of Kentucky interpreted Kentucky's corporate income tax statutes so as to prohibit the filing of combined income-tax returns for unitary, multi-corporate groups.  Instead, each member of the multi-corporate group was required to file its own, separate return.  Plaintiffs state that each of them complied with this directive for taxable years after December 31, 1988 and filed separate Kentucky corporate income tax returns.  In 1994, the Kentucky Supreme Court interpreted the corporate income-tax statutes differently, holding that multi-state unitary corporations must calculate their income on the basis of their combined group as a whole, not separately as the Revenue Cabinet insisted.  *GTE and Subsidiaries v. Revenue Cabinet*, 889 S.W.2d 788, 793 (Ky. 1994) [hereinafter *GTE*].

Plaintiffs allege that while the *GTE* case was still pending, the Revenue Cabinet secretly accepted corporate income-tax returns from select corporate taxpayers that were calculated on the combined/unitary method, rather than on the separate method as the Revenue Cabinet previously required.  Plaintiffs assert that such differential treatment caused them to pay more in corporate income taxes than other similarly situated taxpayers, due to the difference in income-reporting methods.  The Plaintiffs state that after 1994, they filed combined amended corporate income-tax returns seeking to obtain tax refunds for overpayment based on the unitary/combined tax-return method recognized by the Kentucky Supreme Court in *GTE*.  The Revenue Cabinet, say the

---

[1]  The "Revenue Cabinet" used to be a separate state agency under Kentucky law.  Due to an Executive Branch reorganization, however, the Revenue Cabinet now exists as the Department of Revenue, a branch of the Finance Cabinet.  *See* Complaint, ¶ 19.

Plaintiffs, only selectively recognized and paid certain refund claims, refusing to process the Plaintiffs' particular refund requests.  These refund claims have not been paid to this day, and are still being litigated.

Since *GTE* was decided in 1994, the Kentucky legislature passed a variety of statutes that restricted or eliminated corporate taxpayers' ability to collect tax refunds on the basis of the unitary/combined business-income approach recognized by *GTE*.  One of these, H.B. 541, was enacted in 2000 by the Kentucky General Assembly.  This statute retroactively barred the Commonwealth from recognizing certain tax refund or credit claims "based on a change from any initially-filed separate return or returns to a combined return under the unitary business concept or to a consolidated return."  KY. REV. STAT. ANN. § 141.200(17) (West 2006).  The statute also prohibited the filing of combined returns under the unitary business concept for certain taxable years, "unless on or before December 22, 1994, the corporation or group of corporations filed an initial or amended return under the unitary business concept or consolidated return for a taxable year ending before December 22, 1994."  *Id.* § 141.200(18).  The Plaintiffs challenged this statute through the Kentucky state-court system.  The Kentucky Court of Appeals held that H.B. 541 violated the Plaintiffs' due process rights, and also denied the Commonwealth's sovereign-immunity defense.  On October 24, 2007, the Kentucky Supreme Court agreed to hear the Commonwealth's appeal of this decision.  This appeal is still pending.

In 2007, during the pendency of the appeal over H.B. 541, the Kentucky General Assembly enacted H.B. 316, the statute that constitutes the basis of the matter before this Court. Section nine of H.B. 316 provides as follows:

Notwithstanding any provision of the Kentucky Revised Statutes to the contrary:

(a) The Commonwealth hereby revokes and withdraws its consent to suit in any forum whatsoever on any claim for recovery, refund, or credit of any tax overpayment for any taxable year ending before December 31, 1995, made by an amended return or any other method after December 22, 1994, and based on a change from any initially filed separate return or returns to a combined return under the unitary business concept or to a consolidated return. No such claim shall be effective or recognized for any purpose.

(b) Any stated or implied consent for the Commonwealth of Kentucky, or any agent or officer of the Commonwealth of Kentucky, to be sued by any person for any legal, equitable, or other relief with respect to any claim for recovery, refund, or credit of any tax overpayment for any taxable year ending before December 31, 1995, made by an amended return or any other method after December 22, 1994, and based on a change from any initially filed separate return or returns to a combined return under the unitary business concept or to a consolidated return, is hereby withdrawn.

(c) The provisions of this subsection shall apply retroactively for all taxable years ending before December 31, 1995, and shall apply to all claims for such taxable years pending in any judicial or administrative forum.

*Id.* § 134.580(9).  This section of the statute therefore revokes the Commonwealth's waiver of sovereign immunity regarding to the type of tax-refund claims asserted by the Plaintiffs in this action.

Section ten of the statute also provides as follows:

Notwithstanding any provision of the Kentucky Revised Statutes to the contrary:

(a) No money shall be drawn from the State Treasury for the payment of any claim for recovery, refund, or credit of any tax overpayment for any taxable year ending before December 31, 1995, made by an amended return or any other method after December 22, 1994, and based on a change from any initially filed separate return or returns to a combined return under the unitary business concept or to a consolidated return.

*Id.* § 134.580(10)(a).  This section of H.B. 316 thus also acts to restrict the Commonwealth's ability to pay the type of tax-refund claims asserted by these Plaintiffs.

4

The Plaintiffs then brought the present action against the Defendants, which challenges the Constitutionality of H.B. 316 under both the United States and Kentucky constitutions.  The Plaintiffs claim that H.B. 316 violates the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and Section Two of the Kentucky Constitution; the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Section Three of the Kentucky Constitution; and Sections Twenty-seven, Twenty-eight, Fifty-one, Fifty-nine, and Sixty of the Kentucky Constitution.  The Plaintiffs also assert that H.B. 316 operates as a "taking" of their refund claims and tax money under the Fifth Amendment of the United States Constitution and Section Thirteen of the Kentucky Constitution.  The Plaintiffs seek relief from this Court declaring sections nine and ten of H.B. 316 unconstitutional, or in the alternative, that H.B. 316 affects a "taking" of the Plaintiff's property.  Additionally, the Plaintiffs ask the Court to enjoin the Defendants from enforcing H.B. 316, to process the Plaintiffs' refund claims, and to pay any refund amount determined to be owed the Plaintiffs, with statutory interest.  Finally, the Plaintiffs ask for an award of attorneys's fees and costs, as well as payment of "just compensation" if H.B. 316 is deemed to affect a "taking."  The Defendants moved to dismiss all these claims.

## II.    Legal Standard

On a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (citation omitted).  "The factual allegations in the complaint must be regarded as true.  The claim should not be dismissed unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)).  Nevertheless, "a plaintiff's complaint will not survive a motion to dismiss under Rule 12(b)(6) unless it contains 'either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Uttila v. City of Memphis*, 40 F. Supp. 2d 968, 970 (W.D. Tenn. 1999) (quoting *Scheid*, 859 F.2d at 436).

## III.    Analysis—Defendant Finance Cabinet's Motion to Dismiss

The Finance Cabinet has moved to dismiss the claims brought against it on grounds that the Court has no subject-matter jurisdiction over the claims because they are barred by the Eleventh Amendment to the United States Constitution.  As explained below, the Plaintiffs have conceded these claims in their Response to the Motions to Dismiss.

The Plaintiffs' action against the Finance Cabinet is barred by the Eleventh Amendment to the United States Constitution. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.  This jurisdictional bar applies regardless of the relief sought."(citations omitted)); *Alabama v. Pugh*, 438 U.S. 781 (1978).

This action against the Finance Cabinet is an action against the Commonwealth of Kentucky without the Commonwealth's consent.  The Court therefore lacks subject-matter jurisdiction with respect to any and all claims asserted in the Complaint against the Finance Cabinet.  Moreover, the Plaintiffs' Response concedes this lack of subject-matter jurisdiction.

The Finance Cabinet's Motion to Dismiss will therefore be granted, and all claims asserted against it by the Plaintiffs will be dismissed.

## IV.   Analysis—Defendants Burnside and May's Motion to Dismiss

## A.   Conceded Claims

In their Response to Defendants Burnside and May's Motion to Dismiss, the Plaintiffs conceded that some of their asserted claims are barred by the Eleventh Amendment, and agreed that they should be dismissed by the Court.  These claims include the following:

> (1) Any and all claims brought against the Defendant, Commonwealth of Kentucky, Finance and Administration Cabinet;[2] (2) Any and all claims founded upon violations of Kentucky law, including the Plaintiffs' claims that H.B. 316 violates Section 2 of the Kentucky Constitution (Count I), Section 3 of the Kentucky Constitution (Count II), Section 51 of the Kentucky Constitution (Count III), Sections 59 and 60 of the Kentucky Constitution (Count IV), Sections 27 and 28 of the Kentucky Constitution (Count V); and Section 13 of the Kentucky Constitution (Count VI); (3) Any and all claims seeking to impose liability that must be paid from public funds in the State Treasury, including the Plaintiffs' prayer for a Judgment and Order of this Court issuing appropriate refunds determined to be owed under KRS § 141.120 with statutory interest pursuant to KRS § 131.183, and for an award of just compensation for the taking of the Plaintiffs' refund claims in violation of the Fifth Amendment to the United States Constitution and Section 13 of the Kentucky Constitution.

Plaintiffs' Response, at 2 n.1.  Since the parties agree that these claims should be dismissed, no further discussion of their respective merits is necessary.  Defendants Burnside and May's Motion to Dismiss is therefore granted with respect to the claims listed above.

## B.   Eleventh Amendment

Defendants Burnside and May assert in their Motion to Dismiss that the Plaintiffs' remaining claims against them are barred by the Eleventh Amendment because the Amendment

---

[2] These claims were discussed and dismissed *infra*, in the portion of this Opinion regarding the Finance Cabinet's separate Motion to Dismiss.

"applies . . . to suits, such as this action, in which an individual state officer in sued 'in his official capacity.'" Individual Defendants' Memorandum in Support of Motion to Dismiss, at 2 (quoting *Ford Motor Co. v. Dept. of Treasury of Ind.*, 323 U.S. 459, 462 (1945)). The Plaintiffs respond that the Eleventh Amendment does not bar the requested relief in this action, as "the Defendants have painted an incomplete picture of Eleventh Amendment jurisprudence." Plaintiffs' Response Memorandum, at 8. The Court agrees with the Plaintiffs that the Eleventh Amendment does not protect the individual Defendants in this action.

The Eleventh Amendment provides as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S Const., amend. XI. Though by its own terms the Eleventh Amendment bars only lawsuits against the State as a party, in some circumstances, suits against State officials are treated as the equivalent of suits against the State itself, and are therefore similarly barred. Namely, if the suit against a State official is such that liability will result in monetary relief being paid from public funds out of the State treasury, the Eleventh Amendment bars the action. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Hutsel v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993). Some of the conceded claims discussed above would necessarily fall into this category, such as the requested order for the payment of the Plaintiffs' tax-refund claims and just compensation. Had such claims not been conceded, they could not be maintained in this Court due to the constraints imposed by the Eleventh Amendment.

However, where the lawsuit in question requests equitable relief against a State official in his official capacity for ongoing violations of federal law, the suit is not barred by the Eleventh

Amendment.  *See Ex Parte Young*, 209 U.S. 123 (1908); *see also Lawson v. Shelby County*, 211 F.3d 331 (6ᵗʰ Cir. 2000) (recognizing that under *Ex parte Young*, "a federal court may enjoin a 'state official' from violating federal law.").  This exception to the Eleventh Amendment's jurisdictional bar applies to requests for both injunctive and declaratory relief against State officials.  *Alden v. Maine*, 527 U.S. 706, 757 (1999).  In the present action, the Plaintiffs seek an Order from the Court declaring H.B. 316 sections nine and ten unconstitutional under the Due Process and Equal Protection Clauses of the United States Constitution, and enjoining the Defendants from enforcing these sections.  The Plaintiffs have also sought an Order enjoining the Defendants to process the Plaintiffs' refund claims.  Such requested relief falls squarely within the *Ex Parte Young* exception to the Eleventh Amendment's jurisdictional bar.

This conclusion is not altered by the possibility that the Commonwealth of Kentucky may incur monetary obligations as an indirect result of the equitable relief sought in this action against the individual Defendants.  The Eleventh Amendment bars orders granting a party "accrued monetary liability" or "retroactive payments" from the State treasury.  *Milliken v. Bradley*, 433 U.S. 267, 289 (1977) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663-64 (1974)).  However, if State monetary consequences may follow only as an indirect result of prospective compliance with a federal court order, i.e, "as a necessary consequence of compliance *in the future* with a substantive federal-question determination," then the Eleventh Amendment does not operate as a bar to the requested relief.  *Id.*

The Commonwealth of Kentucky may indeed incur monetary obligations in the future if this Court should declare H.B. 316's challenged provisions unconstitutional and enjoin its enforcement.  However,

> State officials, in order to shape their official conduct to the mandate of the
> Court's decrees, would more likely have to spend money from the state treasury
> than if they had been left free to pursue their previous course of conduct.  Such an
> ancillary effect on the state treasury is a permissible and often an inevitable
> consequence of the principle announced in *Ex parte Young.*

*Edelman*, 415 U.S. at 667-68.  Additionally, were the Court to order the processing of the

Plaintiffs' refund claims, it is possible that when the claims' merits are decided, the

Commonwealth will find itself required to pay the Plaintiffs out of the State treasury.  However,

as the Plaintiffs correctly point out, if this payment is in fact what ultimately happens, it is not

because the Court has ordered it.  An order to process the Plaintiffs' tax-refund claims would

only be an order to submit the claims to State review under Kentucky's corporate tax-refund

laws.  If the Commonwealth is required to pay the Plaintiffs' refund claims, it will be because

State law has required this, not because the Court has ordered it.  The Eleventh Amendment does

not preclude federal jurisdiction over these claims, and the individual Defendants' Motion to

Dismiss on these grounds is denied.

**C.     Tax Injunction Act**

The Defendants assert that the Tax Injunction Act, 28 U.S.C. § 1341, precludes this Court

from asserting jurisdiction over the Plaintiffs' challenges to H.B. 316, sections nine and ten.  The

Court does not agree with the Defendants, and will not dismiss the Plaintiffs' claims on these

grounds.

The Tax Injunction Act provides as follows: "The district courts shall not enjoin, suspend

or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and

efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341 (2000).  The act is a

fairly broad restriction on the jurisdiction of the federal district courts, forbidding them from

issuing either injunctive or declaratory relief against the assessment, levy, or collections of state

taxes.  *See Jefferson County v. Acker*, 527 U.S. 423, 433 (1999) ("[T]he Court has held that

declaratory relief falls within the [Tax Injunction] Act's compass."); *California v. Grace*

*Brethren Church*, 457 U.S. 393, 408 (1982) (same); *Thiokol Corp. v. Dept. of Treasury of Mich.*,

987 F.2d 376, 378 (6th Cir. 1993) ("This exclusion of federal courts from the state taxation area is

so far reaching it precludes federal courts from declaring state tax laws unconstitutional.").

As far-reaching as the Tax Injunction Act's exclusion of jurisdiction is, however, it is not

without its limits.  The Plaintiffs in this case are seeking equitable relief against sections nine and

ten of H.B. 316.  Specifically, they are asking this Court to declare these sections

unconstitutional under the federal Due Process and Equal Protection Clauses, and to enjoin their

further enforcement by the Defendants.  As noted above, this kind of requested relief is normally

barred by the Tax Injunction Act.  The question, then, is whether sections nine and ten of H.B.

316 can be considered "tax[es] under State law," for it is only these that are implicated by the

terms of the Tax Injunction Act.

Federal case law on this issue is admittedly sparse.  Most of it concerns whether a state's

monetary assessment can be considered a "tax under State law," as opposed to a "fee" or "fine."

*See, e.g., Hedgepath v. Tennessee*, 215 F.3d 608, 612 (6th Cir. 2000); *Hexom v. Ore. Dept. of*

*Trans.*, 177 F.3d 1134 (9th Cir. 1999); *San Juan Cellular Telephone Co. v. Public Serv. Comm'n*

*of Puerto Rico*, 967 F.2d 683, 685 (1st Cir. 1992).  The Tenth Circuit Court of Appeals discussed

several definitions of "tax" that appeared in dictionaries contemporaneous with the enactment of

the Tax Injunction Act.  These defined "tax" as "'[a]n enforced, usually proportional,

contribution, esp. of money, levied on persons, income, land, commodities, etc., for the support

11

of government and for the public needs," and also as "'[a] charge, esp. a pecuniary burden imposed by authority; . . . laid upon persons or property for public purposes; a forced contribution of wealth to meet the public needs of government.'" *Hill v. Kemp*, 478 F.3d 1236, 1244 (10th Cir. 2007) (citations omitted). The challenged statutory sections in this case do not mandate any monetary assessment of any kind, on anyone. Section nine of H.B. 316 purports to revoke the Commonwealth of Kentucky's waiver of sovereign immunity with respect to lawsuits over the type of tax-refund claims at issue in this case. Section ten essentially directs the state treasury not to pay these tax-refund claims. Clearly, neither of these sections authorize monetary assessments or contributions on persons or property to meet public needs. The Court concludes that sections nine and ten of H.B. 316 cannot be considered "tax[es] under State law" within the terms of the Tax Injunction Act.

This conclusion is reinforced by the United States Supreme Court's decision in *Hibbs v. Winn*, 542 U.S. 88 (2004). In *Hibbs*, the Supreme Court clarified the scope of the Tax Injunction Act. *Hibbs* involved a challenge to a state statute authorizing income-tax credits for payments that award private-school scholarships and tuition grants; the plaintiffs sought to enjoin this statute since they argued that it violated the Establishment Clause. *Id.* at 92-93. The defendants raised the Tax Injunction Act as a defense, arguing that the Act prevented the federal courts from exercising jurisdiction over the challenge to the state taxation law. *Id.* at 93. The Court held that the Tax Injunction Act did not bar the relief sought by the plaintiffs. The Court explained that the Tax Injunction Act only applies "in cases Congress wrote the Act to address, *i.e.*, cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." *Id.* at 107. The plaintiffs here did not seek to restrain the collection, levy, or assessment of a tax they

12

owed, or to otherwise avoid paying state taxes, with the relief they sought.  *Id.* at 99 ("To determine whether this litigation falls within the TIA's prohibition, it is appropriate, first, to identify the relief sought.").  The Tax Injunction Act was therefore inapplicable.

Following *Hibbs*, the Courts of Appeals have similarly held that the scope of the Tax Injunction Act is specifically limited to situations where parties seek relief that would operate to reduce the inflow of state taxation revenue, or where the relief will allow the parties to avoid paying state taxes.  *See, e.g., Hill v. Kemp*, 478 F.3d 1236, 1249 (10th Cir. 2007) ("The [*Hibbs*] Court explained that the 'moorings' of the TIA rest on a 'state-revenue-protective' rationale."); *Luessenhop v. Clinton County*, 466 F.3d 259, 265 (2d Cir. 2006) ("At a minimum, . . . *Hibbs* unambiguously [held] that summarily dismissing plaintiffs' causes of action because they pertain to state tax administration in the most general sense would be a patent misreading of the TIA . . . .  *Hibbs* . . . explain[s] that Congress' intent in enacting the TIA was the prevention of a particular evil; namely, using federal courts as a vehicle to bring suits challenging the validity or amount of a particular tax assessed against an individual person or entity."); *ACLU of Tenn. v. Bredesen*, 441 F.3d 370, 373 n.1 (6th Cir. 2006) (stating that it is "at least questionable" whether the Tax Injunction Act would apply to cases where parties "are not seeking to avoid paying" a tax).

In light of *Hibbs* and Court of Appeals precedent, the conclusion that the Plaintiffs' requested relief is not barred by the Tax Injunction Act is inescapable.  The immediate relief sought in this case would not prevent the Commonwealth of Kentucky from collecting tax revenue from the Plaintiffs; the Plaintiffs have already paid their tax liabilities.  Similarly, the relief would not require the Commonwealth to refund the Plaintiffs any overpayment of taxes

previously paid; it would only allow the Plaintiffs to later pursue state tax-refund procedures. Admittedly, a possible future consequence of the requested relief may be the repayment to the Plaintiffs of some amount of tax revenue.  However, this consequence is speculative and will depend entirely on the application of state taxation procedures to the Plaintiffs' refund claims, not on any direct acts of this Court or its holding today.

The Defendants argue that it is the ultimate effect of federal-court relief on a State's tax administration system that determines whether the Tax Injunction Act applies to bar the federal proceeding.  As such, continue the Defendants, State tax administration is just as impaired when a federal court declares a tax-related law unconstitutional, thus allowing taxpayers to pursue a refund of previously collected tax funds (the case at bar), as when a federal court enjoins the prospective collection or assessment of tax funds.  There is certain amount of logic to this argument.  However, the underlying policies of the Tax Injunction Act, as explained by the Supreme Court in *Hibbs*, appear to foreclose this line of interpretation.  *See Hibbs*, 542 U.S. at 104-05 ("In short, in enacting the TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority.  *Nowhere does the legislative history announce a sweeping congressional directive to prevent 'federal-court interference with all aspects of state tax administration*.'") (emphasis added); *id.* at 104 ("[T]he TIA was 'shaped by state and federal provisions barring anticipatory actions by taxpayers *to stop the tax collector from initiating collection proceedings*.'") (quoting *Jefferson County v. Acker*, 527 U.S. 423, 435 (1999)) (emphasis added). In sum, the Tax Injunction Act does not bar the requested relief in this action.

14

**D.      Rules of Federal Equity Jurisprudence**

The Defendants have also argued that rules of federal equity jurisprudence independently preclude the Court from granting the requested relief, and that the action should therefore be dismissed.  Defendants appear to contend that, so long as adequate state remedies are available for the Plaintiffs to seek redress of their Constitutional claims, these rules of equity jurisprudence prevent the Plaintiffs from obtaining relief from this Court.  The Court does not agree with this contention.

The "rules of federal equity jurisprudence" which the Defendants invoke prevent a taxpayer from challenging the collection of a state tax when a plain, adequate, and complete remedy is available to the taxpayer in the state courts.  *Matthews v. Rodgers*, 284 U.S. 521, 525-26 (1932).  These equity rules, like the Tax Injunction Act, derive from "the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation."  *Fair Assessment in Real Estate Administration v. McNary*, 454 U.S. 100, 103 (1981).  It is this principle of comity, this desire on the part of the federal courts to avoid "[i]nterference with state internal economy and administration," that counsels the courts to refrain from providing equitable relief that would impede the collection of state taxes.  *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298 (1943).

Based on this precedential background, the Defendants assert that the Plaintiffs' claims cannot proceed in this Court.  The Defendants appear to infer a very broad rule of thumb from these cases: where a state tax-related statute is challenged, and the plaintiff has an adequate state remedy, federal jurisdiction must not lie.  Since both of these factors are satisfied by the present

15

action, the Defendants contend, federal equity/comity principles require that the action be dismissed. The Court agrees that in appropriate cases, these principles preclude federal jurisdiction over challenges to state taxes, even where the Tax Injunction Act does not otherwise apply to restrict federal jurisdiction. *See Fair Assessment*, 454 U.S. at 103; *In re Gillis*, 836 F.2d 1001, 1009 (6th Cir. 1988). However, the Court does not believe that this action presents an appropriate case for the application of these federal equity/comity principles.

The Defendants cite to *Fair Assessment in Real Estate*, 454 U.S. 100, and *Great Lakes Dredge & Dock Co.*, 319 U.S. 293, as authority for their argument that principles of federal equity/comity preclude the Court from hearing this case. In both of these cases, the Supreme Court held that federal courts could not issue the relief requested by the plaintiffs against the administration of state tax laws. In so holding, the Court did use language of seemingly broad scope in certain instances, lending some credence to the Defendants' expansive reading of the jurisdictional bar imposed by comity principles. *See Fair Assessment in Real Estate*, 454 U.S. at 103 ("[I]t was upon this comity that we relied in holding that federal courts, in exercising the discretion that attends requests for equitable relief, may not even render declaratory judgments as to the constitutionality of state tax laws."). However, when the specific, factual circumstances of these cases are examined, it is clear that while comity principles compelled dismissal there, they do not do so in the present case.

In *Fair Assessment in Real Estate*, the plaintiffs challenged a county's disparate assessment of property valuations for property tax purposes. *Fair Assessment in Real Estate*, 454 U.S. at 106. The complaint sought relief from the alleged unconstitutional administration of the tax assessment procedures, seeking actual and punitive damages for previous taxation

16

overassessments.  *Id.*  The Court considered several factors present in this case to determine that comity principles precluded granting the relief sought.  Namely, the Court looked to whether granting damages, along with the declaratory judgment that a damages finding would necessarily require, would suspend collection of the state's taxes until the litigation was ended, and whether this would have a disruptive effect on state coffers.  *Id.* at 113-17.  This was particularly true in *Fair Assessment in Real Estate* since the numerous defendants included "virtually every key tax official in St. Louis County."  *Id.* at 114.  Additionally, the Court considered the defendants' actions challenged in the case as such that "may well be the result of policies or practicalities beyond the control of any individual officer."  *Id.* at 115.  Moreover, the plaintiffs sued these tax officials in their individual capacities.  *Id.* at 113.  Thus, the action raised fears of personal liability on the part of individual tax officials for actions that may have been beyond their control, leading to a "chilling effect" on state-tax administration should the action be allowed to proceed.  *Id.* at 114-15.  Therefore, granting the relief sought would "'in every practical sense operate to suspend collection of the state taxes,'" indicating that comity principles required dismissing the action.  *Id.* at 115 (quoting *Great Lakes Dredge & Dock Co.*, 319 U.S. at 299.

In *Great Lakes Dredge & Dock Co.*, the plaintiffs challenged the application of a state unemployment tax, bringing suit to prevent the collection of the state tax through means of a declaratory judgment.  *Id.* at 296.  Similar to the outcome in *Fair Assessment in Real Estate*, federal rules of equity and comity precluded granting the relief demanded.  "Interference with state internal economy and administration is inseparable from assaults in the federal courts on the validity of state taxation, and necessarily attends injunctions, interlocutory or final, restraining collection of state taxes."  *Id.* at 298.  The Court held that the request for a declaratory judgment

regarding the application of this state tax implicated the same comity considerations attending an injunction of the tax. *Id.* at 299. The action was therefore dismissed.

The circumstances of the present action differ from those of the above cases such that federal equity/comity principles do not preclude the Court from granting the requested declaratory and injunctive relief. Unlike in *Great Lakes Dredge & Dock Co.*, the relief in this action would not operate to suspend the collection of state taxes—here, the taxes have already been collected, and the plaintiffs are not seeking an order from this Court directing a refund of these taxes. Unlike in *Fair Assessment in Real Estate*, plaintiffs have not sought damages against a multitude of state tax administration officials as defendants in their individual capacities, only equitable relief against two state executive branch members in their official capacities. The basis of complaint in this case—two provisions of a state statute—cannot compare with the complained-of actions in *Fair Assessment in Real Estate*, disparate property tax assessments. Because of such factors, in *Fair Assessment in Real Estate* there were genuine concerns of a "chilling effect" on state tax administration had the Court allowed the requested relief. In the present action, the declaratory and injunctive relief would only mean that the Commonwealth of Kentucky would need to consider the merits of these few plaintiffs' tax refund claims under state tax law, which may in fact lead to an ultimate dismissal of the claims. This can hardly be said to "suspend the collection of state taxes," "interfere[] with state internal economy or administration," or create a "chilling effect" on state tax administration in the sense of the above Supreme Court cases.

Moreover, *In re Gillis*, which the Defendants also cite for support, is similarly distinguishable. In *In re Gillis*, a plaintiff class consisting of all Kentucky citizens owning

18

taxable property assessed at fair cash value, brought suit against a defendant class consisting of

all property valuation administrators, as well as the state Secretary of Revenue.  *In re Gillis*, 836

F.2d 1001, 1002 (6th Cir. 1988).  The plaintiff class challenged the defendants' disparate

assessment of property values for tax collection, much as the *Fair Assessment in Real Estate*

plaintiffs did.  *Id.*  The plaintiffs sought declaratory and injunctive relief, as well as costs and

attorneys' fees.  *Id.* at 1003.  The Sixth Circuit Court of Appeals held that principles of comity

precluded granting this relief.  In reaching this conclusion, the Court looked to the same factors

that were utilized in *Fair Assessment in Real Estate*.  In *In re Gillis*, as in *Fair Assessment in*

*Real Estate*, there was a large number of named defendants ("[e]very county property valuation

administrator is named as a defendant"), and the policies plaintiffs complained of might well

have been beyond the defendants' control.  *Id.* at 1008-09.  As such, the Court felt that a fear of

impeding state tax collection and administration was present to the same degree as in *Fair*

*Assessment in Real Estate*, mandating a similar dismissal on the basis of federal equity/comity

principles.  *Id.* at 1008-10.  The action before this Court, therefore, is distinguishable from *In re*

*Gillis* for the same reasons that it is distinguishable from *Fair Assessment in Real Estate*.

Significantly, the Supreme Court recently stated in *Hibbs v. Winn* that "this Court has

relied upon 'principles of comity,' . . . to preclude original federal-court jurisdiction *only when*

*plaintiffs have sought district-court aid in order to arrest or countermand state tax collection*."

*Hibbs*, 542 U.S. at 107 n.9 (emphasis added) (citing *Fair Assessment in Real Estate*, 454 U.S.

100; *Great Lakes Dredge & Dock Co.*, 319 U.S. 293).  This statement appears to endorse a much

more limited application of federal comity principles to state-tax-related actions.  Since the relief

sought in this case will not operate to "arrest or countermand state tax collection," principles of

comity are as inapplicable to this case as they were to *Hibbs v. Winn*.  For the reasons given above, federal rules of equity and comity will not bar the requested relief in this action.[3]

**E.      Whether the Plaintiffs' Claims are Moot**

The Defendants also argue that the Plaintiffs' requests for injunctive relief, specifically, to order the Defendants to "process" the Plaintiffs' tax-refund claims, are moot.  Defendant argues that all of the Plaintiffs' refund claims were already administratively processed years ago,[4] and that all such refund claims were denied on the grounds that the Plaintiffs had failed to establish that they conducted a "unitary business" in Kentucky.  Two of the refund claims were also given additional reasons for denial, such as being time-barred by the statute of limitations.

The Plaintiffs, on the other hand, contend that these requests for injunctive relief are not moot.  The Plaintiffs explain that timely protests were filed against all the denials of the tax-refund claims, and that five of the six claims are still pending before the Revenue Cabinet.  The Plaintiffs contend that without being granted all the injunctive relief they request, namely, to enjoin enforcement of H.B. 316 sections nine and ten and to order the processing of the refund

---

[3]  The parties have also disputed whether Kentucky state courts afford a "plain, adequate, and complete" remedy for the Plaintiffs' action.  The Court holds today, for reasons wholly apart from considerations of the adequacy of state-court remedies, that principles of comity do not bar the requested relief in this action.  Therefore, the Court declines to address the issue of whether Kentucky provides a "plain, adequate, and complete" relief to the Plaintiffs.  The cases discussed above illustrate that dismissal on the basis of comity depends more on factors indicating an impairment of state-tax collection, rather than solely on the presence or lack of adequate state remedies.

[4]  At a hearing on this matter, the Defendants' counsel explained that the "processing" of tax-refund claims in Kentucky consists of a two-step process.  First, the taxpayer files for the tax refund, and if the Department of Revenue wishes to deny the claim, it issues a "Notice of Disallowance" to the taxpayer, which explains that the refund claim has been tentatively disallowed.  Second, if the taxpayer protests this decision, the Department of Revenue negotiates with the taxpayer and eventually issues a Final Ruling on the subject.  At any time, the taxpayer may request a Final Ruling from the Department of Revenue, and upon receipt of this request, the Department must act on it and issue a Final Ruling within thirty days.  This Final Ruling may be appealed to the Kentucky Board of Tax Appeals, and from there to the Circuit Court, the Kentucky Court of Appeals, and to the Kentucky Supreme Court.

claims, Defendants will be forever able to foreclose review of the refund claims' merits by invoking sovereign immunity pursuant to H.B. 316.  The Plaintiffs explain that this scenario is precisely what happened to Bunzl USA, Inc., the only Plaintiff to litigate its tax-refund denial beyond the issuance of its Final Ruling.  Bunzl USA, Inc. appealed its Final Ruling to the Kentucky Board of Tax Appeals and litigated the refund claims's merits for nearly two years before the Revenue Cabinet successfully moved to dismiss the refund claim on the grounds of sovereign immunity.  The likelihood, perhaps the certainty, of this happening again for the other pending tax-refund claims, say the Plaintiffs, explains why their requests for injunctive relief are not moot, despite the Revenue Department's previous administrative processing of all the pending refund claims.

The Court agrees with the Plaintiffs that their requested injunction preventing the prospective enforcement of H.B. 316 sections nine and ten is not moot.  Despite the Revenue Cabinet's decision to deny the Plaintiffs' refund claims, Plaintiffs still have the option of appealing these decisions through the state court system.  However, the possibility exists that the merits of these refund claims will never be reached at all, since the Defendants will be able to dismiss the refund claims simply by invoking the contested provisions of H.B. 316.  The possibility of such an outcome leads this Court to conclude that the Plaintiffs' claims for injunctive relief, in so far as they relate to the enforcement of H.B. 316's provisions, are not moot and shall not be dismissed on this ground.

The Plaintiffs' claims for injunctive relief specifically relating to the "processing" of the tax-refund claims, however, is either moot or superfluous, depending on how one defines "processing."  If by "processing," the Plaintiffs mean the taking the initial administrative steps

21

necessary to consider their refund claims, injunctive relief to "process" the claims is moot, since these administrative steps have already been taken.  If by "processing" the Plaintiffs instead mean the larger, overall step of allowing the merits of the refund claims to be heard and decided, this request will be effectively accomplished should the Court ultimately decide to enjoin the prospective enforcement of H.B. 316, sections nine and ten.  Therefore, the Plaintiffs' request to enjoin the "processing" of the claims is superfluous to the other injunctive relief requested, the propriety of which will be decided on another day.  As such, the Defendants' Motion to Dismiss is denied with respect to the requested relief enjoining the enforcement of H.B. 316, and is granted with respect to the relief enjoining the "processing" of the refund claims.

      **WHEREFORE,** the Court being sufficiently informed, and for the reasons stated above:

1.      The Defendant Revenue Cabinet's Motion to Dismiss is **GRANTED;**

2.      The Defendants Burnside and May's Motion to Dismiss is **GRANTED** with respect to the portion of Count One founded on section two of the Kentucky Constitution; the portion of Count Two founded on section three of the Kentucky Constitution; Count Three; Count Four; Count Five; Count Six; Count Seven; and the portions of Count Eight requesting relief enjoining the "processing" of Plaintiffs' refund claims, and for the paying of all sums determined to be owed, along with statutory interest; and

3.      The Defendants Burnside and May's Motion to Dismiss is **DENIED** with respect to the portion of Count One founded on the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution; the portion of Count Two founded on the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; the portions of Count Eight requesting relief enjoining the enforcement of H.B. 316,

sections nine and ten (K.R.S. §§ 134.580(9), (10)); and the portions of Count Eight requesting relief declaring H.B. 316, sections nine and ten (K.R.S. §§ 134.580(9), (10)) unconstitutional.

Dated this 29th day of February, 2008.

**Signed By:**

*__Karen K. Caldwell__*

**United States District Judge**